54 CCPA

**Application of William M. McLAMORE.**

**Patent Appeal No. 7829.**

United States Court of Customs and Patent Appeals.

June 22, 1967.

Connolly & Hutz, Wilmington, Del. (Werner H. Hutz, Nicholas E. Oglesby, Jr., Wilmington, Del., of counsel), for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of, and new rejection by, the Patent Office Board of Appeals, as finally formulated on reconsideration August 26, 1965, refusing the single claim, claim 1, of Mc-Lamore application, serial No. 660,064, filed May 20, 1957, for "Oral Antidiabetic Agent."

*Introduction*

This case is related to In re Ruschig, 379 F.2d 990, 54 CCPA —— (No. 8071), decided concurrently herewith, in that the claim here on appeal is for the same chemical compound as the single claim, claim 13, there on appeal. As explained in our opinion therein, the claim originated in this McLamore application, was suggested to Ruschig et al. for interference, interference No. 89,010 was instituted, and subsequently dissolved by the examiner on his own motion on the ground the claim was not patentable over prior art. We refer to our concurrent opinion in the *Ruschig* case and also to our earlier opinion of April 22, 1965, in the same case, 343 F.2d 965, 52 CCPA 1238 (No. 7254), for further information and background and for other purposes as will appear.

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

Briefly, the invention here involved is a specific chemical compound defined in the single claim on appeal as

N - (p - chlorobenzenesulfonyl) - N' - propylurea.

This compound is also known by the generic name chlorpropamide and is sold by the assignee of this application, Chas. Pfizer & Co., Inc., under the trademark "Diabinese" as an oral antidiabetic medication when compounded with a suitable carrier to make a tablet for oral administration.

This appeal and the second appeal in the *Ruschig* case (No. 8071) were both considered by the same panel of the Board of Appeals and, as will be seen, have become somewhat interrelated. In the above-mentioned interference, McLamore moved to dissolve on the ground the count (claim 1 here, claim 13 of Ruschig et al.) was not supported by the Ruschig et al. disclosure and that motion was denied by the examiner who held it *was* supported. The patentability over prior art of a number of Ruschig et al. claims, including claim 13, came to this court from a board decision affirming rejection on prior art and we reversed in the above-cited decision (No. 7254). On return of the case to the examiner, he reopened it and rejected claim 13 alone on the new ground that it was not supported by the Ruschig et al. disclosure and that question was appealed to us. In our concurrent opinion in No. 8071 we are affirming that rejection. We now have before us the ex parte question of the patentability of the same claim to McLamore over prior art which now includes a patent issued to Ruschig et al, on an application which was a division of the application we had before us in the *Ruschig* case.[1] There is no connection between the assignees of the McLamore and Ruschig et al. applications. They are competitors. In this country the real parties in interest appear to be Pfizer and The Upjohn Company.

## The Rejection

The examiner rejected claim 1 as unpatentable over the references listed below because their disclosures render the compound obvious to one of ordinary skill in the art.

| | | |
|---|---|---|
| Martin et al. | 2,371,178 | Mar. 13, 1945 |
| Swedish patent | 120,428 | Dec. 16, 1947 |
| French patent | 919,464 | Mar. 10, 1947 |

As shown by our opinion in In re Ruschig, No. 7254, supra, the same references were relied on in that case to support the rejection of claims which included claim 13 for the same specific compound as claim 1 here. We there reversed that rejection on April 22, 1965.

March 4, 1965, before our *Ruschig* decision, the board affirmed the examiner's rejection. It did so in an opinion common to two appeals, this case, which is called Case I, and an appeal by McLamore in a division of Case I claiming the *process* of lowering blood sugar in diabetic humans and *tablets* for such use, which is called Case II.

Appellant filed a request for reconsideration and a few days after our *Ruschig* decision a supplemental request calling the board's attention to it. Thereupon the board granted the request, coupling it with a statement that it

1. For the board decision of Mar. 4, 1965, resulting in the allowance of the divisional application, serial No. 185,865, see Ex parte Ruschig, 379 F.2d 990, 54 CCPA ——.

wished to reconsider both cases at the same time. Thereafter appellant filed considerable further material bearing on the usefulness of chlorpropamide.

August 26, 1965, the board rendered a new decision in both McLamore Cases I and II, opening with the statement:

The following references are cited:

| Ruschig et al. | Application No. 601,107 | filed July 31, 1956 |
| Ruschig et al. | Patent No. 3,198,706 | Aug. 3, 1965 |

(filed Apr. 9, 1962, division of 601,107)

———◆———

The board explained: "The patent is used as the reference, with the application being made of record for its dates."

The Ruschig et al. patent and its origin are described in our opinion in No. 8071. Like McLamore's Case II, it claims the *process* for lowering blood sugar and *tablets* for oral administration. The board's rejection based on this newly cited reference appears in its context as follows (all emphasis ours):

The question remains as to whether the claims [of Cases I and II] are obvious under 35 U.S.C. 103 over Ruschig et al. The Ruschig et al. patent (as well as the application, the disclosures being substantially the same) discloses a large class of benzene sulfonyl urea compounds useful in the oral treatment of diabetes. Appellant discloses a single compound falling within the class and used for the *same purpose*. Furthermore, the difference between this compound and several disclosed by Ruschig et al. is such that the compound would be obvious *to the chemist*.

Appellant urges the *outstanding results* obtained in using his compound in the oral treatment of diabetes. It is pointed out that the Court in In re Ruschig et al., supra, emphasized the properties of appellant's compound; it even referred to the results of the work of appellant's assignee. *In view of the singular advantages,* the recommendation made in Case II [in the prior opinion of the board, that the examiner re-examine the case in the light of any Ruschig et al. patent that issued] is withdrawn and *a new rejection will not be made.*

However, the situation in Case I is considered different. The *claim* is for *the compound itself,* not restricted to any particular use, and appellant does not even pretend that the compound would be unobvious to the chemist. *Here the argument based on the discovery of the results obtained is not considered relevant or controlling.* Appellant has been allowed claims to the particular discovery expressly claimed and composition claims limited to the use have been indicated as allowable, in another application. This use in the oral treatment of diabetes is the *reason* for allowing the claims in Case II and *the same reason should not be used as a basis for allowing another patent.* This situation was not before the Court in In re Ruschig et al. *A new rejection of the claim in Case I as being obvious over Ruschig et al. is made.*

This is the primary, if not the only, rejection before us for decision and we point out that it was made for the first time by the board in its last decision and that appeal here followed directly within seventeen days. As to the earlier rejection on art, the board continued (emphasis still ours):

As to the previous rejection of the claim in Case I, we feel that here also *the particular use of the compound should not be considered,* for the reasons given above. However, in view of the Ruschig et al. reference, this rejection becomes secondary and cumulative only, and need not be further considered unless Ruschig et al. is over-

come as to its filing date or effective filing date.

\* \* \* \* \* \*

In view of the fact that a new rejection has been made in Case I (Appeal No. 202–32), this decision is to be considered a new decision insofar as Case I is concerned.

### Appellant's Points

Appellant's brief states and discusses the following points:

1. Ruschig et al. does not render the invention of the appealed claim obvious.

2. The other relied on prior art does not render the invention of the appealed claim obvious and this Court has so held.

3. The situation is not different because McLamore has been allowed use claims in another application.

### Opinion

We reverse the rejection.

Point (2) has been effectively eliminated from the case by the solicitor. His brief states:

Since appellant made no effort to antedate the Ruschig patent, the other prior art "need not be considered", as stated by the Board. Hence, appellant's statement (2) under the "Statement Of Points To Be Discussed" (Br–8), and the argument relating to point (2) (Br–12, 13) will not be discussed in the Commissioner['s] brief. Manifestly they need not be considered by the Court.

Although the solicitor's conclusion does not seem to follow from his stated premise, considering our decision, all we would have to say on point (2) in any event would be that we have indeed "so held," in In re Ruschig, No. 7254. The solicitor appears to accept that holding though the board clearly did not and, manifestly, there is no reason for us to consider the question again since the solicitor has elected not to argue it.

The sole question, therefore, is obviousness under 35 U.S.C. § 103 of chlorpropamide, N-(p-chlorobenzenesulfonyl)-N'*propyl*urea, in view of the disclosure of Ruschig et al. Patent No. 3,198,706.

There is no issue of anticipation by the reference because, as the board pointed out, it had already held in the *Ruschig* appeal, which we are concurrently affirming in No. 8071, that the reference does not disclose the compound. We have quoted the entire substance of the board's opinion on the obviousness issue. The first important point to be observed in it is that the board, which originated this rejection, *accepted* appellant's evidence of the superior properties and "outstanding results" obtained in using chlorpropamide, over anything disclosed by Ruschig et al. including the closest compound specifically disclosed, the corresponding N'-*butyl*urea, with which the board was thoroughly familiar. Notwithstanding this closeness of structure and the existence in the two compounds of the *same* property to some extent, the "singular advantages" found by the board were deemed by it *sufficient to render unobviousness in law* the *process* of reducing blood sugar and the *tablet* used for that purpose, claimed in Case II. It found the claims in that case patentable and their subject matter unobvious even though use for the *same* purpose is the sole use disclosed in the Ruschig et al. reference. The only conclusion that can be drawn from this holding is that in the opinion of the board chlorpropamide possesses unobvious advantageous properties, notwithstanding the showing of closely related compounds with similar properties in the reference. The method and tablet claims of Case II were allowed on the basis of those properties which inhere in the compound, the recitation of the compound in those claims being what makes them patentable.

The next thing to note about the board opinion is that it made a point of saying that in the *Ruschig* case (No. 7254, the first one) we did not have before us the "situation" it had before it, apparently meaning that the possession of the "sin-

gular advantages" had not been used as a *reason* for allowing claims in another case. We there faced virtually the same argument the board is posing, however, and rejected it, namely, that under such a state of facts the invention should not be claimed as a *compound* but by some form of claim reciting the properties, such as the *method* of lowering blood sugar or a *tablet* for oral administration to diabetics. See the last four paragraphs of our opinion wherein we stated we had also faced the same question in In re Papesch, 315 F.2d 381, 50 CCPA 1084, and answered it by approving claims to the compounds.

The third thing we note about the board's opinion is that although appellant strenuously argued the authority of *Papesch,* the board ignored that decision to the point of not even mentioning it in any of its opinions.

■■ We consider the board's reasoning to be in error in that it refused to consider, as neither relevant nor controlling, the evidence of the results obtained and the arguments based thereon for the apparent reason that the claim is directed to the compound per se and not limited to any particular use. This we deem clearly in conflict with our decisions in *Ruschig,* in *Papesch,* and in the numerous precedents referred to therein. According to the principles we there expounded, in deciding the patentability of a compound all of its properties are to be taken into account. The outstanding properties of the compound claimed here, admitted by the board, are facts relevant to patentability of the compound and are not to be ignored merely on the ground the same facts have been taken into consideration in deciding to allow other claims. Facts are not consumed in use. The Patent Office is not on sound ground in saying to appellant: We are refusing you this claim *because* we have allowed you other claims and in doing so listened to and accepted your arguments, wherefore we will not listen to them again.

The solicitor has cited In re Druey, 319 F.2d 237, 50 CCPA 1538, as support for the board's argument that the same reason should not be used to support claims in two different applications. We find no support in the case for that proposition. In *Druey* an attempt was made to dispel the prima facie obviousness of a compound used *as an intermediate* to make a sulfa drug by showing superior properties *of the drug*. We found them unrelated to the intermediate and held the affidavit failed to establish any unobvious or unexpected property in the claimed intermediate. The most that can be gleaned is a mere comment by the board, quoted by us, that "to whatever extent the asserted superiority may be the basis for patentability, appellants' contribution has been recognized by the granting of Patent No. 2,858,309. The compound before us, however, must shine in its own light, not in the reflected glory of another compound."

The solicitor has reargued in his brief the question of the obviousness of chlorpropamide to a chemist as a compound, that is, what we sometimes refer to as its "structural obviousness." This is not a matter in dispute. We think appellant would concede that all 1,237,464 compounds he claims to be within the Ruschig et al. disclosure or the 38,556 compounds he claims to be within the broadest patent claim, are structurally obvious.

As we said in *Papesch,* at the beginning of the section entitled "Opinion," "The problem of 'obviousness' under section 103 * * * is a problem of *patent law*", not a question of chemistry. In asserting that the claimed compound "would be obvious to the chemist" from the Ruschig et al. reference, the board is not dealing with the patent law problem before us, the solution to which, under 35 U.S.C. § 103, depends on whether the invention as a whole—the compound and all its properties, including the degree to which they are present—is obvious.

With respect to legal unobviousness, the solicitor undertakes, briefly, to argue the merits of the evidentiary showing of the facts on which legal unobviousness is

based and also attempts to distinguish *Papesch* by arguing that here the *same* desirable property is disclosed for the prior art compound. On the basis of our understanding of the board opinion, we do not think either of these points is open for consideration because the board *accepted* appellant's arguments and applied them to the allowance of Case II claims. The board simply refused to consider the accepted factual showing with respect to the claim of Case I because, in its opinion, the invention should not be claimed as a compound. However, we note that we have previously considered the situation where an applicant shows unexpectedly and substantially improved results with respect to the *same* field of use known to the prior art and we have accepted evidence thereof as overcoming a prima facie showing of obviousness. See In re Wiechert, 370 F.2d 927, 54 CCPA 957, and cases therein cited.

The only point we desire to mention in connection with appellant's point (3) is that the reason the claims the board found allowable are "in another application" instead of in an application with the claim at bar, wherefore "another patent" would issue upon allowance of claim 1, is that the Patent Office required restriction. Appellant argues that the board's ruling is "tantamount to using the patent issued on McLamore's divisional application Serial No. 141,557 as a reference" which is prohibited by 35 U.S. C. § 121. The solicitor strenuously opposes this argument on various grounds but we find it unnecessary to discuss it since the sole reference is the Ruschig et al. patent. Clearly, section 121 has no applicability but we think the requirement for restriction may have a bearing if it is ever argued the claims cannot be issued in separate patents. However, we do not sense that the board gave any weight to that possibility.

The decision of the board is reversed.

Reversed.

WORLEY, Chief Judge, concurs in the result.